# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SCOTTIE LYNELL CARRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:18-cv-00142-JEO |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Scottie Lynell Carrell appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. (Doc. 1).[1] Carrell timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the court finds that the Commissioner's decision is due to be affirmed.[2]

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

[2] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8).

## I. Procedural History

Carrell alleges he became disabled on July 8, 2016. (R. 19).[3] Carrell claims he could no longer work due to a below the knee amputation following a car accident. After his claims were denied, he requested a hearing before an ALJ. Following the hearing, the ALJ denied his claim. (R. 18-32).

He appealed the decision to the Appeals Council ("AC"). After reviewing the record, the AC declined to further review the ALJ's decision. (R. 1-4). That decision became the final decision of the Commissioner. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

## II. Statutory and Regulatory Framework

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a) & 416.920(b).

---

[3] References herein to "R. __" are to the administrative record found at Docs. 11-1 through 11-21 in the court's record.

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* "Under the first step, the claimant has the burden to show that []he is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4] If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. At the first step, the ALJ determined Carrell has not engaged in substantial gainful activity since July 8, 2016. (R. 19).

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(c) & 416.920(c). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See id.* at § 404.1502. Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." *Id.*; *see also* 42 U.S.C. § 423(d)(3). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

404.1520(c).[5] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a) and (c). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § & 404.920(c) & 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined Carrell has the following severe impairments: below the knee left leg amputation with use of a prosthesis; phantom limb syndrome; and obesity. (R. 19).

---

[5] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.920(a)(4)(iii) & (d) and § 416.920(d). The claimant bears the burden of proving his impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Carrell did not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings. (R. 22).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e) & 416.920(e). A claimant's RFC is the most she can do despite his impairment. *See id.* at § 404.1545(a)(1) & 416.945(a). At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and 416.945(a)(4)(iv). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1) and 416.960(b)(1). The claimant bears the

burden of proving that her impairment prevents him from performing her past relevant work. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant is capable of performing his past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b), 416.945(a)(4(iv).

Before proceeding to the fourth step, the ALJ determined Carrell has the RFC to perform a limited range of light work. (R. at 23). More specifically, the ALJ found Carrell had the following limitations with regard to light work, as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b):

> the claimant can lift and carry twenty pounds frequently and ten pounds occasionally. He can sit approximately six hours in an eight-hour workday with all customary breaks, and stand/walk approximately four hours in an eight-hour workday with all customary work breaks. The claimant cannot operate foot controls with his left leg, but can occasionally operate foot controls with his right leg. The claimant can occasionally climb ramps and stairs, but can never work on ladders, ropes, or scaffolds. He can occasionally balance and stoop, but never kneel, crouch, or crawl. The claimant should avoid concentrated exposure to extreme cold and heat, and vibrations. He should avoid all exposure to dangerous moving machinery, unprotected heights, and commercial driving.

(*Id.* at 23). At the fourth step, the ALJ determined Carrell would not be able to perform his past relevant work as a welder and boilermaker. (*Id.* at 30).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy

in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) & (g)(1), 404.1560(c)(1), 404.920(a)(4)(v) & (g)(1). If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.*at § 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will determine the claimant is disabled. *Id.*

At the fifth step, considering Carrell's age, education, work experience, and RFC, the ALJ determined he can perform jobs that exist in significant numbers in the national economy, such as those of hand bander, tagger, and inspector. (R. 31). Therefore, the ALJ concluded Carrell has not been under a disability as defined by the Act since June 2, 2016, through the date of the decision. (R. 32).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court

must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

**IV. Discussion**

There are two issues presented in Carrell's brief: (1) whether the ALJ properly evaluated Carrell's complaints of pain and (2) whether the ALJ articulated good cause for according less weight to the opinions of Carrell's treating physician. (Doc. 17 at 4-14).

## A. Carrell's Pain Complaints

The first issue concerns the adequacy of the ALJ's evaluation of Carrell's pain complaints. In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the **claimant must satisfy two parts** of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (bold added); *see also* 20 C.F.R. §§ 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d); 416.929(c) & (d). While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how her symptoms affect her. 20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4). In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but

9

whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

The ALJ found that Carrell's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 24). As will be discussed in detail below, the court finds that the ALJ's determination is supported by substantial evidence.

As noted previously, Carrell alleges disability as of July 8, 2016, due to severe phantom left leg pain and infections from his below the knee amputation. (R. 45). At his administrative hearing, he testified that he stopped working because of the phantom pain in his leg and recurrent infections. (*Id.*). He explained his prosthetic became unusable and that it needs a new sock, which he is unable to afford. (R.45-46). Concerning his activities, Carrell stated that he rarely drives because of his medication. (R.48). He is able to bathe, but it takes him about 1½

hours to do so and get dressed. (R. 49). He spends most of his day lying down, he could sit for only a couple of hours; stand or walk for possibly an hour; frequently had to elevate his leg above his heart; and could not lift greater than 10 pounds. (R. 50-53, 56). He gets sores on his leg every two weeks to the point he cannot use his prosthesis for 3-4 days at a time. (*Id*.). Carrell explained he is unable to afford treatment from an orthopedic specialist or a neurologist. (R. 52). He further stated that as a result of his condition he is bedridden approximately 15 days a month. (R.50). He described his phantom pain as sharp, piercing needles. (R. 57).

Carrell argues that the "ALJ erroneously relies upon isolated notations in the record and fails to properly consider the medical record in its entirety." (Doc. 17 at 6). He further argues that the "longitudinal medical record … is consistent with [his] allegations of debilitating phantom leg pain and resulting limitations." (*Id*. at 7). More specifically, Carrell argues that the ALJ's decision is incorrect because the evidence shows that (1) Dr. Ham "consistently prescribed multiple medications which included narcotic pain medication, which is consistent with treatment for at least chronic moderately severe pain and (2) he continued to have phantom pain. (*Id*. at 9). Carrell also challenges the ALJ's conclusion concerning the January 13, 2017, emergency room treatment note discussing his work activity at the time of his difficulty. (*Id*.).

The Commissioner responds that substantial evidence supports the ALJ's subjective system assessment. (Doc. 18 at 5).

Carrell's below the knee amputation on May 1, 2013, was the result of a motor vehicle accident three days earlier. (R. 405). He experienced pain and difficulty with his prosthesis in November and December 2013. (R. 925, 928). Specifically, he had difficulty when he returned to work. (R. 928). Dr. Jason Ham's notes reflect that Carrell complained that his amputation site became very painful after extended periods of weight bearing activity. (R. 929). It was determined that he had a redundant stump. He had revision surgery on January 6, 2014, due to his inability to get into a prosthesis.[6] (R. 382, 557).

Carrell's medical records evidence that he regularly reported lower extremity pain and tenderness during many of his doctor's visits from 2014 through 2017. (R. 931 (Feb. 2014), 935 (July 2014), (R. 943-44 (May 2016), (R. 946 (June 2016), R. 966 (Sept. 2016), R. 964 (Nov. 2016), R. 960-61 (Dec. 2016), R. 958 (Feb. 2017), March 2017 (R. 957), and (R. 1111 (July 2017)). The records document the reports of phantom pain as stabbing, throbbing, pressure and twisting. (R. 944, 957, 958, 960, 961, 966-67). However, with the exception of a one-time rash, Dr. Ham routinely observed no evidence of cyanosis, rashes, redness, edema, or swelling. (R 957, 960, 962, 964, 966 & 1111-12). Additionally,

---

[6] Dr. Daniel Fisher, Jr. noted that Carrell "was otherwise extremely healthy." (R. 557).

Carrell also frequently denied numbness, tingling, swelling, redness, warmth, or ecchymosis (skin discoloration from blood underneath the skin). (R. 957, 959, 962, 966 & 1111). Carrell was treated with multiple medications including Clonazepam, Gabapentin, Norco and Oxycodone. (R. 956. 958-59, 961, 963, 965, 982 & 1110).

Carrell also sought treatment on an emergency basis for left lower leg pain on five occasions in a three year period. The first was March 13, 2014, after he fell and hurt his left stump. (R. 662). The second was on October 16, 2014, when had complaints of increased pain. (R. 657). The notes reflect that he had recently returned to work and was spending more time in his prosthetic leg. (R. 657). The third one was on May 12, 2016, when fell again. (R. 787). An MRI revealed only mild bone marrow edema suggestive of a stress reaction and trace joint effusion. (R. 785). The fourth one was on January 13, 2017, when he experience lower back and lower leg phantom pain.[7] (R. 1087). The last was on April 4, 2017, when he experienced phantom left leg pain at the level of 9/10. (R. 1094, 1099). A sonographic study of his leg done at that time was unremarkable and showed no evidence of a mass, cyst, or fluid collection. (R. 1093).

In evaluating this evidence, the ALJ found that the treatment notes did not support Carrell's subjective complaints. (R. 28). To the extent Carrell alleged

_____

[7] The treatment notes indicate that Carrell had been working and bending over for two to three hours. (R. 1088).

difficulty walking due to phantom pain, the ALJ explained that his examinations were unremarkable with the exception of some tenderness and a one-time rash. (R. 24, 26). To the extent he complained of left leg and phantom pain, the ALJ found that the records showed that Dr. Ham frequently observed that Carrell walked normally, appeared healthy, and was in no apparent distress. (R. 24-25, 28, 957, 960, 962, 964, 966, 1111-12). Additionally, the records show that Carrell frequently denied weakness, catching/locking, popping/clicking, buckling, grinding, or instability. (R. 27, 957, 959, 962, 966, 1111).

To the extent Carrell testified that his prosthetic was "unusable" due to pain and infection, the ALJ found that the medical records did not document frequent irritation or infection. (R. 26). His determination that Dr. Ham routinely observed no evidence of cyanosis, rashes, redness, edema, or swelling is correct. (*See* R. 24-25, 28, 957, 960, 962, 964, 966, 1111-12). Additionally, as just noted, Carrell also frequently denied having such symptoms. (*See* R. 957, 959, 962, 966, 1111).

To the extent Carrell testified that indigence prevented him from obtaining adequate care, the ALJ stated that coverage of pre-existing conditions is one of the main provisions of the Affordable Care Act.[8] (R. 29). Importantly, he also correctly noted that there was no evidence in the medical record showing that Carrell had been denied treatment for financial reasons. (*Id*.). The ALJ also noted that there

---

[8] *See, e.g.*, 45 C.F.R. § 147.108(a).

was no evidence Carrell had been denied care from another facility due to financial reasons. (*Id.*).

In assessing Carrell's complaints, the ALJ compared other portions of his testimony with the other medical evidence. First, he noted that while Carrell claimed that he had not worked since 2016, records from his January 13, 2017, emergency room visit stated that he reported he had been "doing straining work with [his] back" and had been "bending over for 2-3 hours" while working. (R. 25, 28, 1087-88). This clearly brings his credulity concerning his complaints into question. Second, the ALJ noted that while Carrell stated that he could not, and had not, driven in the prior year, treatment notes from January 13, 2017, ER visit showed Carrell reported he was driving himself. (R. 28, 56, 60-61, 1087-88). The ALJ explained that driving requires sitting in one place for a period of time while simultaneously using one's feet to operate foot controls. (R. 28-29). Though Carrell also alleged that his medications caused drowsiness and impacted his ability to drive, (R. 61), the ALJ noted that the record consistently documented that Carrell was alert and oriented. (R. 29, 789, 796, 802, 805-06, 809, 819, 823, 1088, 1096, 1104, 1107). The ALJ's decision is further supported by Carrell's September 20, 2016, disability report wherein he denied experiencing any side effects from the listed medications. (R. 261). Third, the ALJ noted that to the extent Carrell testified he needed to elevate his legs above his chest, (R. 56), there is no evidence

of such a restriction in the treatment notes. (R. 29). Carrell has not adequately challenged any of these findings.

In sum, the ALJ correctly considered "the consistency of [Carrell's] statements" with the remainder of the evidence. *See* SSR 16-3p, 2017 WL 5180304, at *8. His determinations are supported by substantial evidence. This claim, therefore, is without merit.

## B. Medical Opinion Evidence

Carrell next asserts that the ALJ erred in failing to articulate good cause for according less weight to the opinion of Dr. Ham as his treating physician. (Doc. 17 at 10). He further argues that the ALJ did not have good cause for discounting Dr. Ham's opinion. (*Id.*). The Commissioner counters that substantial evidence supports the ALJ's decision. (Doc. 18 at 11). The court agrees with the Commissioner.

The evidence concerning the relevant opinions by Dr. Ham is as follows. On November 7, 2016, Dr. Ham completed a Medical Source Opinion ("MSO") form wherein he stated that Carrell could sit without limitation, stand for four hours, walk for two hours, and lift up to 50 pounds occasionally with various postural limitations. (R. 953-54). He noted that these limitations are due to frequent irritation and infection at the amputation site. (R. 954). On April 10, 2017, he opined, in part, in a Physical Capacity Evaluation that Carrell could sit for four

hours, stand for one hour, walk for one hour, occasionally lift up to five pounds, and never use either leg to push or pull. (R. 978-79). On a "Non-exertional Factors Affecting Your Patient" form, Dr. Ham rated Carrell's pain as "severe" and further opined that he would have to frequently lie down to the relieve pain and that prescribed medications made Carrell drowsy. (R. 980). Dr. Ham also wrote a letter with the evaluations stating, in pertinent part, that Carrell needed special care "around the clock" on an intermittent basis, potentially up to four days a week. (R. 983).

Dr. Krishna Reddy, the State Agency Medical Consultant, opined on September 7, 2016, that Carrell could perform a light range of work. (R. 25-26, 29, 85-87). The ALJ assigned substantial weight to that opinion. (R. 29).

The ALJ bears the responsibility for assessing the extent of a claimant's work-related abilities and limitations based on all relevant evidence in the record, including the medical opinions submitted by any treating, examining, or non-examining source. (*See* Doc. 18 at 13 (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). A treating physician's opinion is generally entitled to deference – substantial or considerable weight. *See Phillips v. Barnhart*¸ 357 F.3d 1240-41 (11th Cir. 2004); 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). An ALJ may, however, reject the opinion of a treating physician for "good cause" such as where the opinion is conclusory, not bolstered by the evidence, or inconsistent with the

record. *Phillips*, 357 F.3d at 1240-41. The ALJ must clearly articulate his or her reasons. *Id*. at 1241. This court is not to "second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec*., 808 F.3d 818, 823 (11th Cir. 2015).

Where the treating source opinion is not given controlling weight, the ALJ is to weigh all medical opinions by considering the examining or treating relationship with the individual, the evidence the physician presents to support his or her opinion, the consistency of the physician's opinion with the record as a whole, the physician's specialty, and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Additionally, a state agency medical consultant's opinions may be entitled to greater weight than a treating source's opinion if it is supported by evidence in the record and a better explanation for the opinion. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *2-3 (July 2, 1996); *Jarrett v. Comm'r of Soc. Sec*., 422 F. App'x 869, 874 (11th Cir. Apr. 11, 2011) (the ALJ did not err in relying on the opinions of the non-examining physicians over the plaintiff's treating physician).

Turning to the present matter, Carrell argues that the ALJ's reliance on the variations in Dr. Ham's November 2016 and April 2017 evaluations and opinions is insufficient to discount his opinion. (Doc. 17 at 11-12). Additionally, he argues

that, contrary to the ALJ's determination, the April 2017 evaluation and opinions are consistent with Dr. Ham's treatment notes. (*Id.* at 12). Next, Carrell argues that the ALJ did not give proper weight to the treating relationship between himself and Dr. Ham. (*Id.* at 13). As a part of this claim, Carrell also challenges Dr. Krishna Reddy's report to the extent it did not include a review of subsequent medical evidence. (*Id.* at 14).

The court finds that the ALJ's decision to afford "little weight to Dr. Ham's 'opinions'" is supported by substantial evidence. (R. 28). The ALJ's assessment is in large part premised on two points: (1) Dr. Ham did not explain the abrupt change in his opinion during the relatively short period (five months) between November 2016 and April 2017 and (2) the overall record does not support his conclusions. (R. 26-28)

As to the first point, the court finds the ALJ is correct in discounting Dr. Ham's April opinions because there is no substantial explanation for the changed opinions. Dr. Ham simply circled various numbers and checked various boxes on the April 2017 forms significantly reducing Carrell's reported abilities, offering little explanation or support. The only explanations offered on the forms for the changes were "pain at the amputation site" and "drowsiness" from medication. (R. 978, 980). In the "Objective signs of Pain" section on the Non-Exertional Factors

form, Dr. Ham simply checked boxes indicating "redness" and "muscle spasm."[9] (R. 980). Accordingly, the court finds this reasoning supports the ALJ's decision to affording the opinions less weight. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (stating Commissioner was free to give little weight to opinion that merely consisted of items checked on a survey with no supporting explanations); *White v. Colvin*, 2016 WL 7341709 (M.D. Ala. 2016) (stating "[r]eports that are conclusory 'because they merely consist[ ] of items checked on a survey, with no supporting explanations' have little probative value").

To the extent Carrell argues that the variations can be explained, in part, based on the fact that the November 2016 "MSO did not address non-exertional factors," (doc. 17 at 12), that the April 2017 report does, the court is not impressed. That is not the point of contention. The issue is that the April 2017 report presents a dramatically different view of Carrell. For instance, the November evaluation states Harrell has no limit on his ability to sit and can stand and walk four and hours, respectively, during a work day. (R. 953). In contrast, the April evaluation states he could only sit for four hours and stand and walk for one hour during an eight-hour work day. (R. 978). Similarly, the November evaluation states Harrell can lift and carry five pounds constantly, twenty pounds frequently, and 50 pounds

---

[9] The "Other" box was also checked, but there was no further explanation. (R. 980).

occasionally. (R. 953). The April evaluation states he can frequently lift five pounds, occasionally lift up to twenty pounds, and never lift more than twenty pounds and he can only occasionally carry up to five pounds and never carry more than five pounds. (R. 979). Lastly, the November evaluation states he can frequently push or pull with each leg and he could constantly reach, handle, finger and feel. (R. 953). In April, it was reported that he could never use his legs or feet and never could reach and only frequently could grasp, finger or handle. (R. 979). These are the variances that are not explained by Dr. Ham. To the extent that Carrell offers Dr. Ham's letter in support of the variances, as is discussed more fully below, his conclusory and unsupported statements therein are insufficient to undermine the determination of the ALJ.

As to the second point, the lack of support in the remainder of the record, the court again finds that the ALJ is correct in his determination that the record does not support Dr. Ham's assessment of Harrell's contentions. Plaintiff's counsel is correct in his argument that the treatment notes document that Harrell complained of phantom pain during numerous visits. (*See* Doc. 17 at 12 (citing R. 944, 957, 958, 960, 961, 966, 967, 1111)). That is not sufficient to undermine the ALJ's determination.

That decision is due to be affirmed because, as noted by the ALJ, the intervening medical evidence does not demonstrate any deterioration in Carrell's condition. (R. 26, 28). As noted by the ALJ and as discussed previously herein, the record generally failed to document muscle spasms or redness. (R. 28, 957, 959, 962, 966 & 1111). Carrell routinely did not experience cyanosis, rashes, redness, edema, or swelling in his left leg.[10] (R 957, 960, 962, 964, 966 & 1111-12). Carrell also frequently denied numbness, tingling, swelling, redness, warmth, or ecchymosis. (R. 957, 959, 962, 966 & 1111). His treatment typically consisted of multiple medications. (R. 956. 958-59, 961, 963, 965, 982 & 1110). Additionally, Dr. Ham consistently noted that Carrell ambulated normally, was in no apparent distress. (R. 25-27, 962, 957, 960, 964). Diagnostic imaging on April 4, 2017, also revealed no evidence of a mass, a cyst, or fluid collection at in Carrell's left leg. (R 1093). Accordingly, the court finds that the medical records support the ALJ's determination.

Still further, Carrell's activities do not support Dr. Ham's claim that he could not use either of his feet. (R. 28, 1087-88). *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902 (11th Cir. 2012) (stating "the ALJ did not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contracted the opinion..."). Specifically, the evidence shows that

---

[10] Dr. Ham did observe a rash one time on November 15, 2016. (R. 962).

Carrell drives, bathes and dresses himself and otherwise takes care of himself, although he does not do any chores around the house.

Under the circumstances, the ALJ properly relied on the opinion of Dr. Reddy that Carrell could perform a range of light work. (R. 25-26, 29, 85-87). In accepting Dr. Reddy's opinion, the ALJ stated that the opinion was supported by the medical record. (R. 29). Specifically, the ALJ stated that the opinion was supported by Dr. Ham's initial opinion on November 7, 2016 opinion x-rays performed just prior to the alleged onset of Carrell's disability, and sonographic imaging studies. (R. 29, 815 (May 2016), 953-54 (Nov. 2016 MSO), 1093 (April 2017 imaging)). Accordingly, the court finds that substantial evidence supports the ALJ's evaluation of the medical opinion evidence. *See Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 711 (11th Cir. 2015) (finding ALJ properly relied on opinions of reviewing medical providers where ALJ properly rejected the treating medical providers' opinions).

To the extent that Carrell argues that Dr. Reddy did not have the benefit of reviewing subsequent medical evidence, which documents his ongoing pain, the court is not impressed. This conclusory statement is not sufficient to undermine the ALJ's reasoned determination. Counsel has pointed to nothing in the subsequent records that would impact Dr. Reddy's determination.

## V. Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds that the ALJ's decision is due to be **AFFIRMED**. A separate order will be entered.

**DATED**, this 19th day of April, 2019.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge